UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-20037-CV-MARTINEZ

GOPRO, INC.,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

      Defendants.

_____/

**PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER,
INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE
DEFENDANT INTERNET STORES, A TEMPORARY ASSET RESTRAINT,
EXPEDITED DISCOVERY, AND AN ORDER TO SHOW CAUSE AS TO WHY A
<u>PRELIMINARY INJUNCTION SHOULD NOT ISSUE</u>**

Plaintiff, GOPRO, INC. ("Plaintiff" or "GOPRO"), by undersigned counsel and pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C § 1651(a), respectfully moves on an *ex parte* basis for entry of a temporary restraining order, including a temporary injunction, a temporary transfer of Defendants' commercial Internet websites, a temporary asset restraint, expedited discovery, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A to the Complaint ("Defendants"). In support, Plaintiff respectfully refers the Court to the following Memorandum of Law.

## MEMORANDUM OF LAW

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the Defendants identified on Schedule A to the Complaint for federal copyright infringement (Count I), trademark infringement and counterfeiting (Count II), false designation of origin (Count III), and common law unfair competition (Count IV). As the Complaint alleges, Defendants promote, advertise, market, distribute, offer for sale, and sell counterfeit products in connection with Plaintiff's federally registered copyrights and trademarks ("Counterfeit Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and online marketplace accounts listed in Schedule A (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores that appear to sell genuine products but instead sell unauthorized and unlicensed Counterfeit Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between

them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing their identities and the full scope and interworking of their counterfeiting operation.

This Court has personal jurisdiction over Defendants because each Defendant targets Florida residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Products to consumers within the United States, including the State of Florida. Specifically, Defendants are reaching out to do business with Florida residents by operating one or more commercial, interactive Internet Stores through which Florida residents can purchase products being sold in connection with Plaintiff's copyrights and trademarks. Defendants directly target unlawful business activities toward consumers in Florida, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Counterfeit Products in connection with Plaintiff's copyrights and trademarks.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit Products; (2) temporarily transferring and disabling the Defendant Internet Stores; (3) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting; and (4) authorizing expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to Defendants' infringement and Defendants' financial accounts.[1]

Given the covert nature of offshore counterfeiting activities and the vital need to establish

---

[1] Plaintiff is concurrently filing a motion to authorize service by electronic publication.

an economic disincentive for counterfeiting, courts regularly issue such orders. *See, e.g.*, *The North Face Apparel Corp., et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No.: 0:22-cv-60193, ECF No. 11 (S.D. Fla. Jan. 27, 2022) (granting orders requested here in similar case); *Louis Vuitton Malletier v. The Individuals, Business Entities, and Unincorporated Associations identified on Schedule A*, No. 0:22-cv-60192, ECF No. 9 (S.D. Fla. Jan. 28, 2022) (same).

Plaintiff's well-pled factual allegations, which must be accepted as true, and evidence submitted through declarations, establish that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of valid copyright and trademark registrations and is the distributor of genuine GOPRO products ("GOPRO Products"), and Defendants' use of Plaintiff's copyrights and trademarks to sell Counterfeit Products is causing consumer confusion. In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate here. Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Products.

Indeed, 15 U.S.C. § 1116(a) authorizes this Court "to grant injunctions . . . to prevent the violation of any right of the registrant of a mark . . . ." *See also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in

active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Finally, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a).

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Intellectual Property and Products

Plaintiff is the registered owner of the various copyrights  ("GOPRO Copyrights") and trademarks ("GOPRO Trademarks").[2] Declaration of Kathy Tsai ("Tsai Decl."), ¶ 4. Plaintiff is a leading manufacturer and distributor of a variety of digital cameras and accessories, and has earned an international reputation for quality, reliability, and value with respect to the GOPRO Products. *Id*., ¶ 5. Plaintiff is the official source of GOPRO Products in the United States. *Id.* Since at least 2006, the GOPRO Trademarks are and have been the subject of substantial and continuous marketing and promotion by GOPRO. GOPRO has and continues to widely market and promote the GOPRO Trademarks in the industry and to consumers. GOPRO's promotional efforts include, for example, substantial print media, the GOPRO Products' website and social media sites, and point of sale materials. The GOPRO Trademarks have been continuously used and never abandoned. The success of the GOPRO brand has resulted in its significant counterfeiting. Tsai Decl., ¶¶ 7-8.

### B.   Defendants' Unlawful and Deceptive Activities

Plaintiff has identified fully interactive commercial Internet stores (in Schedule A) operating under the Defendant Domain Names and/or the online marketplace accounts, which sell

---

[2] The GOPRO Copyrights are covered by U.S. Copyright Office Registration Nos. VA 2-176-473; VA 2-331-408; VAu 1-337-071; VAu 1-407-358; VAu 1-407-538; VAu 1-407-562; VAu 1-407-667; VAu 1-444-037; VAu 1-432-651; and VA 2-096-117. The GOPRO and HERO trademarks are covered by U.S. Trademark Registration Nos. 3032989; 5008425; 5187830; 5214644; 5307372; 5375510; 5933092; 6252363; 6373283; 6720168; 4993752; 3308141; and 5375974.

Counterfeit Products using the GOPRO Copyrights and GOPRO Trademarks from foreign countries to consumers in this District. Tsai Decl., ¶¶ 10-16 & Ex. 2.

Defendants typically facilitate sales by designing the Defendant Internet Stores so they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine GOPRO Products. Tsai Decl., ¶ 20. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. *Id.* They often include images and design elements that make it difficult for consumers to distinguish counterfeit sites from authorized websites. *Id.*, ¶¶ 20-21. Plaintiff has not licensed or authorized Defendants to use the GOPRO Copyrights or GOPRO Trademarks, and none are authorized retailers of genuine GOPRO Products. *Id.*, ¶ 22.

Defendants also typically deceive unknowing consumers by using the GOPRO Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for GOPRO Products. Tsai Decl., ¶ 23. Defendants also deceive unknowing consumers by using the GOPRO Copyrights without authorization within the product descriptions of their Defendant Internet Stores to attract customers. *Id.*

Further, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Tsai Decl., ¶ 24. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete or contain randomly typed letters. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious

names and addresses. *Id.* Defendants use these common tactics to conceal the full scope of their massive counterfeiting operation, and to avoid being shut down. *Id.*

Despite operating under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. Tsai Decl., ¶ 25. For example, many of the Defendant websites have virtually identical layouts. *Id.* In addition, Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit, suggesting that the Counterfeit Products originate from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, user-defined variables, domain redirection, lack of contact information, and the use of the same text and images. *Id.*

## III.   **ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct caused, and continues to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the GOPRO Copyrights and GOPRO Trademarks. *See* Tsai Decl., ¶¶ 28-33. To stop Defendants' sale of Counterfeit Products, Plaintiff requests that this Court issue a temporary restraining order ordering, among other things, expedited discovery regarding Defendants and the freezing of Defendants' assets. Without the relief requested, Defendants' unlawful activities will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell

goods in connection with counterfeits of the GOPRO Products via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the GOPRO Copyrights and GOPRO Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will move any assets from U.S.-based bank accounts, including PayPal accounts, and take other steps to evade enforcement such as redirecting traffic to other websites they control. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (*ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").

 Plaintiff therefore respectfully requests this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the copyright claim under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.  This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of

operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

A.     **This Court May Exercise Personal Jurisdiction Over Defendants.**

Personal jurisdiction exists over Defendants in this Judicial District pursuant to Fla. Stat. § 48.193 (1)(a)(1)–(2) and Fl. Stat. § 48.193 (1)(a)(6)(a), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores accept orders of Infringing Products from and offer shipping to Florida addresses located in this Judicial District. Indeed, the Southern District of Florida regularly exercises personal jurisdiction over websites using registered copyrights and/or trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Florida residents over the internet. *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns*, Case No. 21-cv-62335-WPD (S.D. Fla. Nov. 16, 2021) (preliminary injunction order after granting TRO); *The North Face Apparel Corp., et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No.: 0:22-cv-60193 (S.D. Fla. Jan. 28, 2022) (same). *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (trademark claims are "tortious acts" for purposes of section 48.193(1)(a)(2)); *Kinon Surface Design, Inc. v. Hyatt Corp.*, No. 18-81065-CV, 2019 WL 4731771, at *3 (S.D. Fla. Jan. 29, 2019) (same for copyright claims).

As detailed in the Complaint and in the Tsai Declaration, Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Counterfeit Products to be sold and shipped to addresses in this Judicial District. *See* Tsai Decl., ¶ 16. In fact, Exhibit 3 to the Tsai Declaration contains copies of exemplary screenshots from the Defendant Internet Stores reflecting  marketing, offers to sell, and the ability for consumers to order Counterfeit Products to  the  Southern  District  of Florida, and proof of orders actually placed and accepted by

numerous Defendants and sent to the Southern District of Florida. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

   **B.**      **Standard for Temporary Restraining Order and Preliminary Injunction.**

District Courts within this Circuit hold that the standards for granting a temporary restraining order and a preliminary injunction are identical. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) *aff'd* 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all relevant factors.

   **C.**      **Plaintiff Will Likely Succeed on the Merits of its Claims.**

   **1.**      **Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). Plaintiff is likely to succeed on the merits of its copyright infringement claim.

First, Plaintiff owns all exclusive rights in various copyrights for the GOPRO products, including without limitation copyrights covered by the GOPRO Copyrights. Tsai Decl., ¶ 4; *see* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is

entitled to institute an action for any infringement).

Second, Plaintiff has shown that Defendants have made unauthorized copies of Plaintiff's works. Specifically, Defendants also deceive unknowing consumers by using the GOPRO Copyrights without authorization, including by displaying them on products sold on the Defendant Internet Stores to attract customers. Tsai Decl., ¶ 23. As a visual representation, Defendants have directly copied Plaintiff's copyrights for the GOPRO Products, or, alternatively, Defendants' representations of Plaintiff's copyrights for the GOPRO products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the GOPRO Products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the GOPRO Products. As just one example, Defendants deceive unknowing consumers by using the GOPRO Copyrights without authorization by placing them on their products to attract customers as follows:

| Plaintiff's Copyright | Counterfeit Product Sold by Defendant Internet Store |
|---|---|
|  | |

Complaint at ¶ 58. Defendants have clearly copied Plaintiff's copyrights without consent.

**2.**     **Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or

advertising of any goods ... which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, Plaintiff must show (1) ownership of the trademark at issue; (2) Defendants' use of the trademark is without Plaintiff's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. *See* 15 U.S.C. § 1114(1). Plaintiff's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

Regarding the first two elements, Plaintiff's GOPRO Trademarks are inherently distinctive and are registered with the U.S.P.T.O. on the Principal Register. The GOPRO Trademarks have been continuously used since at least 2006, and Plaintiff has and continues to widely market and promote the GOPRO Trademarks in the industry and to consumers. Tsai Decl., ¶ 7. The registrations for the GOPRO Trademarks are valid, subsisting, and in full force and effect. *Id*., ¶ 4 & Ex. 1. Such registration constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the GOPRO Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use the GOPRO trademarks, and none of the Defendants is an authorized retailer of genuine GOPRO Products. *Id*., ¶ 22.

The Eleventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. *See Safeway Store, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982); *see also Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. *Id.*

In this case, due to their long-standing use and wide acceptance by the public, the GOPRO Trademarks have become famous and associated with high quality GOPRO products. The GOPRO Trademarks are distinctive when applied to GOPRO products. The mark signifies to consumers that the products come from Plaintiff and are manufactured to the highest quality standards. Thus, the first factor, the strength of the marks, weighs heavily in favor of Plaintiff.

Here, Plaintiff satisfies the likelihood of confusion test. Defendants sell Counterfeit Products using marks identical to or substantially indistinguishable from the GOPRO Trademarks, and in respect of goods identical to the genuine GOPRO Products. The second and third likelihood of confusion factors thus weigh heavily in favor of Plaintiff.

Plaintiff also satisfies the fourth and fifth factors—the similarity of the sales method and advertising media—because convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Here, regarding the Defendants that Plaintiff alleges committed trademark infringement, both Plaintiff and Defendants show the very same product using the GOPRO Trademarks to the same consumers, using at least one of the same marketing channels, the Internet, within the same geographical distribution areas within the United States, including the Southern District of Florida. *See, e.g.*, Complaint ¶ 72; *compare generally* Complaint ¶ 48, with Tsai Decl., Ex. 3.

Regarding the sixth factor, this District has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1333. In this case, Defendants are intentionally using

the GOPRO Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the sixth factor regarding Defendants' intent also weighs heavily in Plaintiff's favor.

As for the seventh and final factor, Plaintiff merely needs to show some evidence of *potential* confusion. *See Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, actual confusion can be inferred because Defendants are selling Counterfeit Products in connection with the GOPRO Trademarks. *See, e.g.*, Complaint ¶ 72; *compare generally* Complaint ¶ 48, with Tsai Decl., Ex. 3. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine GOPRO Products or are sponsored or endorsed by Plaintiff. This factor weighs in favor of Plaintiff. In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, which consequently has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

**3.      Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.**

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992). Because the GOPRO Trademarks are registered marks, and Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claims against Defendants—which, as discussed *supra* require a showing of likelihood of confusion—a likelihood of success on the merits for Plaintiff's false designation of origin claim has likewise been established.

4.      **Plaintiff Is Likely to Succeed on Its Common Law Unfair Competition Claim.**

Whether a defendant's use of a plaintiff's trademarks creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). As discussed above, Plaintiff has satisfied the elements of its trademark counterfeiting and infringement claims against Defendants, establishing that a likelihood of confusion  exists. Therefore, Plaintiff is also likely to succeed on the merits of its corresponding common law claim.

D.      **There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

The Eleventh Circuit has held that "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx., 180, 191 (11th Cir. 2005. A finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. *Id*. Defendants' unauthorized use of the GOPRO Copyrights and GOPRO Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *See* Tsai Decl., ¶¶ 28-33.

E.      **The Balancing of Equities Tips in Plaintiff's Favor.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm

if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *TY, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiffs' trademark." *Malarkey-Taylor Assocs., Inc*. *v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996). As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Equity requires that Defendants cease their unlawful conduct.

## F.   Issuance of the Injunction Is in the Public Interest.

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 WL 244746, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief."). Because "enforcement of the trademark laws prevents consumer confusion," issuance of an injunction enforcing Plaintiff's Trademarks would prevent such confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Here, Defendants engaged in illegal activities and directly defraud the consuming public by palming off Defendants' Counterfeit Products as genuine, causing customer confusion. The public has the right not to be confused and

defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. The injury to the public is significant, and the injunctive relief Plaintiff seeks is specifically intended and needed to remedy that injury by dispelling the public confusion created by Defendants' actions.

## IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark ...." 15 U.S.C. § 1116(a); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A.   Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.

Plaintiff requests a temporary injunction requiring that Defendants immediately cease all use of the GOPRO Copyrights or GOPRO Trademarks. Such relief is necessary to stop the ongoing harm to the GOPRO Copyrights and GOPRO Trademarks and associated goodwill, as

well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the GOPRO Copyrights or GOPRO Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Products.

Courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting.[3]

**B.      Transferring the Defendant Domain Names to Plaintiff's Control Is Appropriate.**

As part of the Temporary Restraining Order, Plaintiff seeks temporary transfer of the Defendant Domain Names to Plaintiff's control to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in Internet litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested. *See e.g.*, *Apple Corps v. Individuals*, No. 20-60982-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 141919 (S.D. Fla. May 21, 2020) (Order prohibiting Defendants from transferring, inter alia, e-commerce stores during pendency of action or until further court order).

As such, Plaintiff respectfully requests that, as part of the Temporary Restraining Order, the Court require the relevant registries and/or registrars for the Defendant Internet Stores to

---

[3] *See, e.g.*, *Apple Corps v. Individuals*, No. 20- 60982-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 141919 (S.D. Fla. May 21, 2020) (granting ex parte application for TRO); *Gucci Am. v. Individuals*, No. 20-60397-CIV- DIMITROULEAS, 2020 U.S. Dist. LEXIS 109004 (S.D. Fla. Feb. 25, 2020) (same); *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 21-cv-62335-WPD* (S.D. Fla. Nov. 16, 2021) (same); *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 21-cv-62034-WPD* (S.D. Fla. Sept. 30, 2021) (same).

transfer the Defendant Internet Stores to Plaintiff.

C.      **Preventing the Fraudulent Transfer of Assets Is Appropriate.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired. Without this restraint, Defendants are likely to fraudulently transfer financial assets overseas. It appears that the Defendants in this case hold most of their assets in foreign countries, making it easy to conceal assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting and infringement scheme. 15 U.S.C. § 1117(a); 17 U.S.C. § 502. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996); *see also SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to freeze all of the defendant's assets because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

Courts in the Eleventh Circuit previously entered an asset restraining order due to the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet. *See e.g.*, *Levi Strauss &*

*Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1515 (S.D. Cal. 1989). In *Levi Strauss*, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. *Levi Strauss*, 51 F.3d at 987. The Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the grant of an injunction preventing the transfer of Defendants' assets is proper.

**D.**     **Expedited Discovery Is Appropriate.**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2). Plaintiff respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful counterfeiting operations. The expedited discovery requested in the proposed order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained.

Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order. Indeed, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *AdMarketplace, Inc. v. TeeSupport Inc.,* 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

Plaintiff's undersigned counsel is aware that the third-party marketplaces and payment services contemplated in the proposed order have cooperated with IP owners in prior cases and under similar circumstances and are accustomed to doing so as part of their business operations. These third parties can comply with these expedited discovery requests without undue burden.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

Because of the strong evidence of counterfeiting and infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## VI.    CONCLUSION

Plaintiff respectfully requests this Court enter a temporary restraining order as to Defendants and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiff also respectfully requests the Court provide a copy of the temporary restraining order to Plaintiff's counsel via e-mail at rbaeza@bsfllp.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants proper notice of the order and any subsequent hearing date.

Dated: January 5, 2024                     Respectfully submitted,

                                            */s/ Rossana Baeza*
                                            Rossana Baeza (FL Bar No. 1007668)
                                            BOIES SCHILLER FLEXNER LLP
                                            100 SE 2nd Street, Suite 2800
                                            Miami, Florida 33131
                                            Tel: (305) 357-8415
                                            rbaeza@bsfllp.com

                                            *Counsel for Plaintiff GoPro, Inc.*

## **CERTIFICATION**

I hereby certify that Defendants were not given notice because notice should not be required.  If Defendants were to learn of these proceedings prematurely, the likely result would be the destruction of relevant documentary evidence and the hiding or transferring of assets to foreign jurisdictions, which would frustrate the purpose of the underlying law and would interfere with this Court's ability to grant relief.

Dated: January 5, 2024                    By: */s/ Rossana Baeza*
                                                  Rossana Baeza