UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 24-20037-CIV-MARTINEZ

GOPRO, INC.,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.
_____/

**ORDER GRANTING EX PARTE
APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

**THIS MATTER** comes before this Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (ECF No. 5), ("Motion for TRO"), filed under 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). Plaintiff moves *ex parte* for entry of a Temporary Restraining Order and an order restraining the financial accounts used by Defendants. As discussed below, Plaintiff has satisfied the requirements for issuance of a Temporary Restraining Order.

This Court will refer the requests for a Preliminary Injunction and Order Restraining Transfer of Assets to Magistrate Judge Eduardo Sanchez by separate order. After careful consideration, this Court **GRANTS** Plaintiff's Motion for TRO as stated herein.

**I.**     **Factual Background**

Plaintiff GoPro, Inc. is the owner of the following trademarks and copyright registrations (respectively, the "GOPRO Trademarks" and "GOPRO Copyrights"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office and The

Copyright Office.

A list of the GOPRO Trademarks is included in the below chart:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 3,032,989 | GoPro | 12/20/2005 |
| 5,008,425 | GOPRO | 07/26/2016 |
| 5,187,830 | GOPRO | 04/18/2017 |
| 5,214,644 | GOPRO | 05/30/2017 |
| 5,307,372 | GOPRO | 10/10/2017 |
| 5,375,510 | GoPro (logo) | 01/09/2018 |
| 5,933,092 | GOPRO | 12/10/2019 |
| 6,252,363 | GOPRO | 01/19/2021 |
| 6,373,283 | GOPRO | 06/01/2021 |
| 6,720,168 | GOPRO | 05/03/2022 |
| 4,993,752 | GoPro Be a HERO. (logo) | 07/05/2016 |
| 3,308,141 | Hero | 10/09/2007 |
| 5,375,974 | HERO | 01/09/2018 |

A list of the GOPRO Copyrights is included in the below chart:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-176-473 | 2019 Product Cameras | 11/05/2019 |
| VA 2-331-408 | 2020 Product: HERO9 Black + Car Wheel (burnout) | 12/22/2022 |
| VAu 1-337-071 | HERO7 Cameras | 08/31/2018 |
| VAu 1-407-358 | 2020 HERO9 Black | 10/02/2020 |
| VAu 1-407-538 | 2020 Packaging Bundle: HERO9 Black Camera Case | 10/05/2020 |
| VAu 1-407-562 | 2020 HERO9 Black Media Mod | 10/05/2020 |
| VAu 1-407-667 | 2020 HERO9 Black Protective Housing | 10/06/2020 |
| VAu 1-444-037 | 2021 Product Packaging: HERO10 Black | 09/24/2021 |
| VAu 1-432-651 | 2021 Product HERO10 Black | 06/04/2021 |
| VA 2-096-117 | Group Registration Photos, HERO5 Black, published September 19, 2016; 28 Photos | 03/30/2017 |

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule A hereto (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be

2

counterfeits, infringements, reproductions, or colorable imitations of the GOPRO Trademarks and GOPRO Copyrights. (*See* Declaration of Kathy Tsai ("Tsai Decl."), ¶¶ 10–18.)

Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the GOPRO Trademarks or GOPRO Copyrights. (*See id.* ¶ 18.)

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and copyright protected products by Defendants. (*See id.* ¶¶ 13–16.) Plaintiff accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs bearing counterfeits of the GOPRO Trademarks and Copyrights at issue in this action, and completed a checkout page requesting each product to be shipped to an address in the Southern District of Florida. (*See id.*) The Plaintiff conducted a review and visually inspected the GOPRO branded and copyrighted items and the items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs, and determined the products were non-genuine, unauthorized versions of the Plaintiff's products. (*See id.*)

## II. Legal Standard

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining

order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

**III.** **Conclusions of Law**

The declarations Plaintiff submitted in support of its *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A. Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiff's Trademarks and/or Copyrights, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's respective products that bear and/or use copies of Plaintiff's respective Trademarks and/or Copyrights.

B. Because of the infringement of Plaintiff's Trademarks and Copyrights, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1. Defendants own or control e-commerce stores and commercial Internet

websites operating under their respective seller identification names and domain names which advertise, promote, offer for sale, and sell products bearing and/or displaying counterfeit and infringing trademarks and copyrights in violation of Plaintiff's respective rights;

      2.      There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks and copyrights will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

      3.      There is good cause to believe that if Plaintiff proceeds on notice to Defendants on this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify domain registration, e-commerce store, and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names, private messaging accounts, and domain names, and transfer assets and ownership of the seller identification names and domain names, thereby thwarting Plaintiff's ability to obtain meaningful relief.

      C.      The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

      D.      The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark and copyright interests and protect the public from being defrauded by the sale of counterfeit goods as Plaintiff's genuine goods.

      E.      Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504, Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and

sales of goods bearing and/or using counterfeits and infringements of Plaintiff's Trademarks and Copyrights. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

      F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

      G.      In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark and copyright laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

      H.      Upon review of Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, it is hereby **ORDERED** that Plaintiff's Application for Temporary Restraining Order is **GRANTED**, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

      (1)      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order, are hereby temporarily restrained as follows:

          a.      From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or displaying the Plaintiff's Trademarks and/or Copyrights, or any confusingly similar trademarks, other than those actually

manufactured or distributed by Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products not manufactured or distributed by Plaintiff, bearing Plaintiff's Trademarks, any confusingly similar trademarks, and/or Copyrights; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or displaying Plaintiff's Trademarks, any confusingly similar trademarks, and/or Copyrights; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Trademarks, any confusingly similar trademarks, and/or Copyrights on or in connection with all Internet based e-commerce stores and Internet websites owned and operated, or controlled by them, including the Internet based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Trademarks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches

to Internet based e-commerce stores and Internet websites registered, owned, or operated by each Defendant, including the Internet based e-commerce stores and Internet websites operating under the Seller IDs and Subject Domain Names;

(4)     Each Defendant shall not transfer ownership of the Internet based e-commerce stores and Internet websites operating under their Seller IDs and Subject Domain Names during the pendency of this action, or until further order of the Court;

(5)     Each Defendant shall preserve copies of all computer files relating to the use of any of the Internet based e-commerce stores and Internet websites operating under their Seller IDs and Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce stores and Internet websites operating under their Seller IDs and Subject Domain Names that may have been deleted before the entry of this Order;

(6)     Upon Plaintiff's request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those registrants;

(7)     Within five (5) days of receipt of notice of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms that are providing services for any of the Defendants, including but not limited to Alibaba Group d/b/a Alibaba.com and Aliexpress.com ("Alibaba"), AllPay Limited ("AllPay"), Amazon Payment Systems, Inc. and Amazon.com, Inc. ("Amazon"), Coinbase Global, Inc. ("Coinbase"), Contextlogic, Inc. ("Wish"), eBay, Inc. ("eBay"), Lakala, LianLian Global t/as LL Pay U.S., LLC ("LianLian"), OFX Group ("OFX"), Paxful, Inc. ("Paxful"), PayEco, Payoneer, Inc. ("Payoneer"), PayPal, Inc. ("PayPal"), Ping Pong Global Solutions, Inc. ("Ping Pong"),

SellersFunding, Shein.com ("Shein"), Shopify, Stripe, Inc. ("Stripe"), Temu.com ("Temu"), Union Mobile Financial Technology Co., Ltd ("Union Mobile"), Walmart.com ("Walmart"), World First UK Ltd. ("World First"), and their related companies and affiliates (together, the "Third Party Providers"), shall:

    a.    Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of funds and disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained.

    b.    Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names identified on Schedule A, as well as any other accounts of the same customer(s); (ii) the identity and location of the Defendants identified in Schedule A, including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related; and (iv) information concerning sales of any Counterfeit Products made by Defendants.

(8)    Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(9)    The Clerk of the Court is directed to issue a single original summons in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES,

PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(10) This Order shall apply to the Seller IDs and Subject Domain Names, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, private messaging accounts, domain names and websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting Plaintiff's Trademarks and/or Copyrights at issue in this action and/or unfairly competing with Plaintiff;

(11) This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction, or until such further dates as set by the Court or stipulated to by the parties;

(12) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(13) After Plaintiff's counsel has received confirmation from the Third Party Providers regarding the funds restrained as directed herein and expedited discovery from the same, Plaintiff shall serve a copy of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the e-commerce stores and websites operating under the respective Seller IDs and Subject Domain Names, or by providing a copy of this Order by e-mail

to the marketplace platform or image hosting website, for each of the Seller IDs or the registrars of record for the Subject Domain Names so that they, in turn, notify each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other relevant documents filed in this action on a website Plaintiff created ("Plaintiff's Serving Notice Website") and shall provide the address to Plaintiff's Serving Notice Website to Defendants via e- mail/online contact form, and such notice shall be deemed good and sufficient service thereof. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants regularly by updating Plaintiff's Serving Notice Website, or by other means reasonably calculated to give notice which is permitted by the Court.

This Order shall remain in effect for **14 days** from the date of entry of this Order and expires on June 5, 2024, unless extended for good cause.

**DONE AND ORDERED** in Miami, Florida this 23 day of May, 2024.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Sealed clerk